UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____
                                                          )

SANDEEP REHAL,                         )         No. 18 CV 674(____)

        Plaintiff,                      )

                                    )         <u>ECF CASE</u>

  - against -                         )

                                    )         <u>COMPLAINT</u>

HARVEY WEINSTEIN, THE WEINSTEIN    )

COMPANY LLC, THE WEINSTEIN          )         <u>JURY TRIAL REQUESTED</u>

COMPANY HOLDINGS LLC, ROBERT     )

WEINSTEIN, AND FRANK GIL,             )

                                    )

                                    )

        Defendants.                 )
_____)

Plaintiff Sandeep Rehal by her attorneys, the Genie Harrison Law Firm and Eisenberg & Schnell LLP, as and for her Complaint against Defendants Harvey Weinstein, The Weinstein Company LLC, The Weinstein Company Holdings LLC, Robert Weinstein and Frank Gil, alleges as follows:

## NATURE OF THE ACTION

1.      For over two years Plaintiff Sandeep Rehal was forced to work in a pervasive and severe sexually hostile work environment at The Weinstein Company LLC and The Weinstein Company Holdings LLC (collectively referred to as "TWC"), defined by endless offensive, degrading, and sexually harassing actions, statements, and touching at the hands of her boss, Harvey Weinstein.  Plaintiff brings this diversity action against Defendants under the New York City Human Rights Law ("NYCHRL" or the "City law"), Administrative Code of the City of New York §§ 8-101 <u>et seq</u>.

1

2. By February 2015, the hostile work environment created by Harvey Weinstein and condoned and enabled by TWC, Robert Weinstein, and the head of Human Resources Frank Gil, escalated to an emotional breaking point for Ms. Rehal.  She had no choice but to leave the job she needed to support herself.

3. As a result of the hostile work environment caused by the incessant sexual harassment, Ms. Rehal has suffered, and continues to suffer from severe emotional distress, anxiety, depression, humiliation, fear, anguish and loss of self-esteem.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. § 1332, as there exists complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

5. Defendants are each subject to the jurisdiction of the Court pursuant to 28 U.S.C. § 1332 with proper venue pursuant to 28 U.S.C. § 1391, as Defendants are residents of and/or are domiciled in this district and the events giving rise to the claims occurred in this district.

## PARTIES

6. Plaintiff Sandeep Rehal was a female employee of Defendants employed as a personal assistant to Harvey Weinstein in TWC's New York City office from approximately February 2013 to February 13, 2015.  She is a citizen of the state of California and at all relevant times met the definition of an "employee" under the NYCHRL.

7. Defendants The Weinstein Company LLC and The Weinstein Company Holdings LLC are Delaware limited liability companies whose principal places of business are in New

York City, New York (collectively referred to as "TWC"). TWC is an employer within the meaning of the NYCHRL.

8. Upon information and belief Defendant Harvey Weinstein is a citizen of the State of New York. He was a Director of the Weinstein Company and was, until he was fired on approximately October 8, 2017, the co-chairman of TWC.  He was Ms. Rehal's employer within the meaning of the NYCHRL.

9. Upon information and belief Defendant Robert Weinstein is a citizen of the State of New York. He was and is a Director of the Weinstein Company, serves as its co-chairman, and is, upon information and belief, an owner of a significant portion of TWC. Robert Weinstein is an employer within the meaning of the NYCHRL. Robert Weinstein aided and abetted his brother Harvey Weinstein's creation of a sexually hostile work environment at TWC for Ms. Rehal and other women.

10. Upon information and belief Defendant Frank Gil is a citizen of the State of New York. He was TWC's Senior Vice President of Human Resources during Ms. Rehal's employment with TWC, and aided and abetted Harvey Weinstein's creation of a sexually hostile work environment at TWC for Ms. Rehal and other women.

## PROCEDURAL REQUIREMENTS

11. Following commencement of this action, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

## FACTUAL ALLEGATIONS

12. Ms. Rehal commenced her employment at TWC in approximately February 2013, at age 26, as Harvey Weinstein's personal assistant.

13. Although Harvey Weinstein told Ms. Rehal when he hired her that "he was "a tough guy and hard to work for," she could never have imagined how awful and terrifying her job would be.

14. As Ms. Rehal soon learned, Harvey Weinstein's assistants were expected to be available at all times; there was no boundary between Harvey Weinstein's work life and personal life. Much of Ms. Rehal's work as an employee of TWC involved catering to Harvey Weinstein's sexual appetites and activities, and catering to his demeaning and often abusive family members.

15. Among Ms. Rehal's myriad tasks was listening to Harvey Weinstein's calls, reading and responding to his emails, managing his doctors' appointment, managing his drivers, doing his shopping, and even getting him clean underwear.

16. Ms. Rehal was required to be involved in and aware of the preparations for, and clean up after, Harvey Weinstein's extremely prolific sexual encounters.

17. Throughout her employment with Defendants Ms. Rehal was required, as a condition of her employment, to work with Harvey Weinstein when he was naked. On an almost weekly basis, she was required to take dictation of emails from him while he was naked.

18. Harvey Weinstein subjected Mr. Rehal to unwelcome touching. Almost every time Ms. Rehal accompanied Harvey Weinstein in his chauffeured Lexus SUV, he made her sit in the back with him and touched her thigh. After Ms. Rehal started wearing pants instead of skirts, Harvey Weinstein would rub between her thighs. When Ms. Rehal sat cross legged in an

attempt to prevent him from being able to touch her thigh, Harvey Weinstein would touch the back of her legs and butt.

19. When Harvey Weinstein followed Ms. Rehal out to the chauffeured Lexus SUV, he frequently would walk very close to her so that his large belly would touch her. When Ms. Rehal attempted to move away he came even closer and pressed himself against her.

20. Ms. Rehal was also subjected to other extremely offensive physical contact, which should never occur in the work environment and to which she would not have been subjected but for Harvey Weinstein's depraved abuses of power, that were aided and abetted for years by Defendants' acts and omissions.

21. Harvey Weinstein used sexist and sexual language to refer to Ms. Rehal, *regularly* referring to her as "cunt" or "pussy."  On numerous occasions he said, "What's wrong Sandeep, is the tampon up too far today?"  His offensive sexist comments about and to Ms. Rehal were constant and were made openly in the presence of other employees of TWC.

22. Harvey Weinstein repeatedly made remarks to Ms. Rehal about her appearance, and her clothes.  Harvey Weinstein told Ms. Rehal she looked good and leered at her. When in a futile attempt to minimize Harvey Weinstein's comments about her appearance, Ms. Rehal started wearing pants, Harvey Weinstein complained to her "you used to dress so cute and now what's going on?"

23. Harvey Weinstein repeatedly emphasized his absolute power to Ms. Rehal and others.  He constantly bragged about his power, stating to Ms. Rehal and other employees, "I am Harvey Weinstein and you are at Weinstein University.  I decide whether or not you graduate."

24. Among Ms. Rehal's responsibilities was to maintain Harvey Weinstein's list of contacts with a special asterisk that identified Harvey Weinstein's "girls," his many sexual partners.

25. Harvey Weinstein also ordered Ms. Rehal to obtain and set up an apartment close to the office for him to use with one of his sexual liaisons, and purchase women's lingerie for the woman in that apartment as well as gifts for other women.

26. In addition to maintaining his list of available women, Ms. Rehal was forced to do many other offensive chores to "assist" in Harvey Weinstein's sex life. She was required to manage the stock of Caverject shots for his erectile dysfunction. She had to obtain the shots and keep them stocked in cabinet behind her desk at Harvey Weinstein's TWC office. Every time Harvey Weinstein went to meet a woman at a hotel, in the office, or elsewhere, which occurred on average at least three times a week when he was in New York, Ms. Rehal was required as part of her job to provide Harvey Weinstein with a shot, which she placed in his jacket pocket or in a brown paper bag.

27. At one point in Ms. Rehal's employment, the Caverject shots were no longer available from the London doctor who had been prescribing them. Harvey Weinstein ordered Ms. Rehal to find a supply in the United States and gave her a bonus of $500 paid by TWC for doing so. Frank Gil, knowing that the bonus was for Ms. Rehal's procurement of erectile dysfunction drugs, authorized the payment.

28. Another "task" Ms. Rehal was forced to do to aid Harvey Weinstein's sexual encounters was to clean up the semen on the couch in Harvey Weinstein's office. This happened on a regular basis, three or so times a week when Harvey Weinstein was in New York.

29. Ms. Rehal had to pick up Harvey Weinstein's used Caverject shots, which he tossed on the floor in his office, hotel rooms and his apartment. She also had to pick up his used condom, and clean up rooms before housekeeping personnel would do their work.

30. Of course, Ms. Rehal was not the only victim of Harvey Weinstein. Upon information and belief and as reported in the New York Times, The New Yorker, and Vanity Fair, Harvey Weinstein's sexual abuse and conduct, and his use of the office, TWC and the staff to enable it, was common knowledge in the office, to management, to his brother Robert Weinstein and to Frank Gil.

31. Before she was forced to quit, Ms. Rehal reported various matters relating to Harvey Weinstein to others within the company. Ms. Rehal was the author of a document entitled "Harvey's Friends." On information and belief, Harvey Weinstein has recently had that document destroyed. Also on information and belief, Ms. Rehal's personnel file is missing and may have been destroyed at Harvey Weinstein's request.

32. By February 2015, Ms. Rehal could not take it anymore. The cumulative effect of the sexually charged environment she was forced to endure, the demeaning tasks she had to perform to enable Harvey Weinstein's sexual behavior, and the physical and emotional abuse she was subjected to left her no choice but to resign.

CLAIMS FOR RELIEF

COUNT I
(Discrimination and Harassment in Violation of the NYCHRL)
(Against Defendants Harvey Weinstein Robert Weinstein and TWC)

33. Plaintiff hereby repeats and re-alleges each and every allegation in the preceding paragraphs as if set forth fully herein.

34. Defendants have discriminated against Plaintiff on the basis of her sex in violation of the NYCHRL by denying her equal terms and conditions of employment, including, but not limited to, denying her the opportunity to work in an employment setting free of unlawful discrimination and sexual harassment, leading to her constructive termination.

35. Defendants have discriminated against Plaintiff on the basis of her sex in violation of the NYCHRL by creating, fostering, and condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

36. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

37. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

38. Defendants' unlawful and discriminatory conduct constitutes willful or wanton negligence, or recklessness, or a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard in violation of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

COUNT II
(Aiding and Abetting in Violation of the NYCHRL)
(Against Defendants Harvey Weinstein Robert Weinstein and Frank Gil)

39. Plaintiff hereby repeats and re-alleges each and every allegation in the preceding paragraphs as if set forth fully herein.

40. Defendant Harvey Weinstein, as set forth above, directly participated in the discriminatory conduct perpetrated against Plaintiff.

41. Defendants Robert Weinstein and Frank Gil aided and abetted Harvey Weinstein's discriminatory conduct.

42. As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income for which Plaintiff is entitled to an award of damages.

43. As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which Plaintiff is entitled to an award of damages.

44. Defendants' unlawful and discriminatory conduct constitutes willful or wanton negligence, or recklessness, or a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard in violation of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants for the following relief:

(a) A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the City of New York;

(b) An injunction and order permanently restraining Defendants and its partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

(c) An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment and post judgment interest, to compensate Plaintiff for all monetary and/or economic harm, including, but not limited to, loss of income, reputational harm and harm to professional reputation; for harm to her professional and personal reputations and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not limited to, compensation for physical injury, pain and suffering, serious psychological and emotional distress, mental anguish, stress and anxiety, embarrassment and humiliation; all other monetary and/or non-monetary losses suffered by Plaintiff;

(d) An award of punitive damages in an amount to be determined at trial;

(e) An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

(f) Such other and further relief as the Court may deem just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, demands a trial by jury in this action.

Dated: New York, New York
January 25, 2018

Respectfully submitted,

/s/
_____
Laura S. Schnell
Eisenberg & Schnell LLP
233 Broadway, Suite 2704
New York, NY 10279
212-966-8900
lschnell@eisenbergschnell.com
*Attorneys for Plaintiff*

Genie Harrison, Esq.
Genie Harrison Law Firm
523 W. 6th Street, Suite 450
Los Angeles, CA 90014
213-805-5301
genie@genieharrisonlaw.com
*Attorneys for Plaintiff*